UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO** Fed. R. Civ. P. 12(B)(6)

| | |
|---|---|
| DAVID J. LORENZO,<br><br>                              Plaintiff<br><br>vs.<br><br>THE BOROUGH OF PALISADES PARK, NEW JERSEY; CHONG PAUL KIM (individually and in his official capacity as Mayor of the Borough of Palisades Park, New Jersey); and SUK "JOHN" MIN (Individually and in his official capacity as a member of the Borough Council of Palisades Park, New Jersey)<br>                              Defendants. | Hon. Claire C. Cecchi, U.S.D.J.<br>Hon. José R. Almonte, U.S.M.J.<br><br><br>Civ. No.: 2:23-CV-21849-CCC-JRA<br>A Civil Action |

**SEMERARO & FAHRNEY, LLC**
R. Scott Fahrney, Esq. │ SBN # 017182008
155 Route 46, Suite 108
Wayne, New Jersey 07470
TEL. (973) 988-5070
Email sfahrney@semerarolaw.com
Attorneys for Defendants

R. Scott Fahrney, Esq.
Mark J. Semeraro, Esq.
*On the brief*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS .......................................................................................... 1

LEGAL ARGUMENT ................................................................................................. 5

    I.      STANDARD OF REVIEW ON MOTION TO DISMISS PURSUANT TO Fed. R. Civ. P. 12(b)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ...... 5

    II.     COUNT I (RETALIATION) MUST BE DISMISSED AS THE PLAINTIFF CANNOT DEMONSTRATE THAT HE WAS DEPRIVED A PERSON OF RIGHTS, PRIVILEGES, OR IMMUNITIES SECURED BY THE CONSTITUTION OR LAWS OF THE UNITED STATES. ............................................................ 7

        a.      Plaintiff has not engaged in any protected speech. ........................................ 8

        b.      Plaintiff failed to plead that Defendants took any adverse action against him in direct retaliation for exercising his rights. ................................................ 9

        c.      Plaintiff's Complaint fails to set forth a causal link between the constitutionally protected conduct and the retaliatory action. ................................................ 11

    III.    THE SECOND COUNT OF PLAINTIFF'S COMPLAINT PLEADS A 42 U.S.C. §1985 CONSPIRACY CLAIM AGAINST MAYOR KIM AND COUNCILMAN MUST BE DISMISSED AS A MATTER OF LAW. ...... 13

        a.      Plaintiff fails to allege any race-based or class based discriminatory animus. .......... 14

        b.      Plaintiff fails to plead a prima facie case for conspiracy. ................................ 16

    IV.    EVEN IF PLAINTIFF HAD SUFFICIENTLY PLEAD A §1983, §1985 AND/OR COMMON LAW CONSPIRACY CLAIMS, THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AND THE COMPLAINT MUST BE DISMISSED AS A MATTER OF LAW ............................................ 17

        a.      New Jersey Law has well established that Plaintiff's position is a political patronage position and subject to serve at the pleasure of the Governing Body, ........................ 18

    V.  ANY CLAIM AGAINST THE MAYOR, AND COUNCILMAN MIN RELATED TO THE RESOLUTIONS PLACING PLAINTIFF ON ADMINISTRATIVE LEAVE, MUST BE DISMISSED AS A MATTER OF LAW BY VIRTUE OF LEGISLATIVE IMMUNITY. ............................................................ 22

    VI.   ALL §1983 CLAIMS AGAINST THE BOROUGH OF PALISADES MUST BE DISMISSED AS A MATTER OF LAW. ............................................................ 24

    VII.   THE THIRD COUNT OF PLAINTIFF'S COMPLAINT (COMMON LAW CONSPIRACY CLAIM) AGAINST MAYOR KIM AND COUNCILMAN MUST BE DISMISSED AS A MATTER OF LAW. .......... 25

CONCLUSION ........................................................................................................ 26

# TABLE OF AUTHORITIES

Page(s)

Cases

122 F.3d 171 (3d Cir.1997)......................................................................... 15

Acierno v. Cloutier,
  40 F.3d 597 (3d Cir. 1994)....................................................................... 23

Aitchison v. Raffiani,
  708 F.2d 96 (3d Cir. 1983)....................................................................... 23

Ashcroft v. al-Kidd,
  563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) ............................... 18, 19

Ashcroft v. Iqbal,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ......................... 6, 7, 11, 12

Ashcroft, supra,
  556 U.S.................................................................................................. 6

Baloga v. Pittston Area Sch. Dist.,
  927 F.3d 742 (3d Cir. 2019)....................................................................... 8

Bd. of Regents of State Colleges v. Roth,
  408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) ........................................ 21

Bell Atl. Corp. v. Twombly,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................ passim

Bogan v. Scott-Harris,
  523 U.S. 44, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998) ..................................... 22, 23

Branti v. Finkel,
  445 U.S. 507, 100 S. Ct. 1287, 63 L. Ed. 2d 574 (1980) ................................... passim

Cabarle v. Governing Body of Pemberton Twp.,
  167 N.J. Super. 129 (Law. Div. 1979) .................................................... 20, 21

Clark v. BASF Salaried Employees' Pension Plan,
  329 F. Supp. 2d 694 (W.D.N.C. 2004)........................................................... 3

Conley v. Gibson,
  355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) .......................................... 5, 24

Connick v. Myers,
   461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983) ............................................................. 9

Connick v. Thompson,
   563 U.S. 51, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011) ............................................................ 24

D.C. v. Wesby,
   583 U.S. 48, 138 S. Ct. 577, 199 L. Ed. 2d 453 (2018) ............................................................ 19

D'Aurizio v. Palisades Park,
   963 F. Supp. 378 (D.N.J. 1997) .............................................................................................. 14

Davila v. Secure Pharmacy Plus,
   329 F. Supp. 2d 311 (D. Conn. 2004) .................................................................................... 14

Deblasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell,
   820 F. Supp. 876 (D.N.J. 1993) .............................................................................................. 15

Digene Corp. v. Ventana Med. Sys., Inc.,
   476 F. Supp. 2d 444 (D. Del. 2007) ....................................................................................... 25

Dyke v. Otlowski,
   154 N.J. Super. 377 (Ch. Div. 1977) ...................................................................................... 20

Elrod v. Burns,
   427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) ........................................ 19, 20, 21, 22

Farber v. City of Paterson,
   440 F.3d 131 (3d Cir. 2006) ........................................................................................ 14, 15, 16

Freedom from Religion Found., Inc. v. Saccone,
   894 F. Supp. 2d 573 (M.D. Pa. 2012) .................................................................................... 23

Gallas v. Supreme Court of Pennsylvania,
   211 F.3d 760 (3d Cir. 2000) ................................................................................................... 23

George v. Rehiel,
   738 F.3d 562 (3d Cir. 2013) ................................................................................................... 18

Goodman v. Pennsylvania Tpk. Comm'n,
   293 F.3d 655 (3d Cir. 2002) ................................................................................................... 19

Green v. Philadelphia Hous. Auth.,
   105 F.3d 882 (3d Cir. 1997), as amended ..................................................................... 8, 9, 10

Griffin v. Breckenridge,
   403 U.S. 88, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971) ............................................................. 14

Harlow v. Fitzgerald,
  457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) ................................................... 17, 18

Hunter v. Bryant,
  502 U.S. 224, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) ......................................................... 17

Kirk v. City of Newark,
  109 N.J. 173 (1988) ...................................................................................................................... 18

Knight v. City of New York,
  303 F. Supp. 2d 485 (S.D.N.Y. 2004) ....................................................................................... 14

Koren v. Noonan,
  586 Fed. Appx. 885 (3d Cir. 2014) ...................................................................................... 8, 9, 10

Lake v. Arnold,
  112 F.3d 682 (3d Cir. 1997) ............................................................................................ 13, 14, 16

Lassiter v. Alabama A & M Univ., Bd. of Trustees,
  28 F.3d 1146 (11th Cir. 1994) ................................................................................................... 18

Lauren W. ex rel. Jean W. v. DeFlaminis,
  480 F.3d 259 (3d Cir. 2007) ................................................................................................. 11, 12

Lopez v. Beard,
  333 Fed. Appx. 685 (3d Cir. 2009) .............................................................................................. 6

Malley v. Briggs,
  475 U.S. 335, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986) ......................................................... 17

McAndrew v. Bucks Cnty. Bd. of Comm'rs,
  982 F. Supp. 2d 491 (E.D. Pa. 2013) ........................................................................................ 12

Mitchell v. Forsyth,
  472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) ......................................................... 17

Moire v. Temple Univ. Sch. of,
  Med., 613 F. Supp. 1360 (E.D. Pa. 1985) ................................................................................. 14

Monell v. Dep't of Soc. Servs. of City of New York,
  436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) ........................................................... 24

Ness v. Marshall,
  660 F.2d 517 (3d Cir. 1981) .......................................................................................... 19, 20, 21, 22

Nilan v. De Meo,
  575 F. Supp. 1225 (E.D. Pa. 1983) ........................................................................................... 15

Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,
998 F.2d 1192 (3d Cir. 1993) ................................................................... 3

Perry v. Sindermann,
408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972) ........................... 21

Phillips v. Cnty. of Allegheny,
515 F.3d 224 (3d Cir. 2008) ..................................................................... 6

Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois,
391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968) ........................... 9

Pierson v. Ray,
386 U.S. 547, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967) ......................... 17

Porter v. Selsky,
287 F. Supp. 2d 180 (W.D.N.Y. 2003) .................................................... 14

Rappa v. Hollins,
991 F. Supp. 367 (D. Del. 1997) ............................................................ 18

Rieger v. Twp. of Fairfield,
121 Fed. Appx. 944 (3d Cir. 2005) ......................................................... 21

Rink v. Ne. Educ. Intermediate Unit 19,
717 Fed. Appx. 126 (3d Cir. 2017) ......................................................... 11

Rutan v. Republican Party of Illinois,
497 U.S. 62, 110 S. Ct. 2729, 111 L. Ed. 2d 52 (1990) ......................... 19, 20, 21, 22

Ryan v. Burlington Cnty., N.J.,
889 F.2d 1286 (3d Cir. 1989) .................................................................. 18

Sauers v. Borough of Nesquehoning,
905 F.3d 711 (3d Cir. 2018) .................................................................... 19

Scicchitano v. Cnty. of Northumberland,
112 F. Supp. 3d 293 (M.D. Pa. 2015) ..................................................... 23

Siegert v. Gilley,
500 U.S. 226, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991) ...................... 17

Stephens v. Kerrigan, CIV. A.,
95-615, 1996 WL 256581 (E.D. Pa. May 15, 1996) ............................... 15

Thomas v. Indep. Twp.,
463 F.3d 285 (3d Cir. 2006) .................................................................... 7, 9, 10

United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott,
    463 U.S. 825, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983) ................................................. 13, 14

Waters v. Churchill,
    511 U.S. 661, 114 S. Ct. 1878, 128 L. Ed. 2d 686 (1994) ......................................................... 9

White v. Pauly,
    580 U.S. 73, 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017) ......................................................... 19

Statutes

42 U.S.C. §1985 ............................................................................................................... 2, 13, 16

N.J.S.A. 10:4-15(a) ...................................................................................................................... 4

N.J.S.A. 10A:4-6 ....................................................................................................................... 24

N.J.S.A. 40A:9-136 ..................................................................................................................... 2

N.J.S.A. 40A:9-137 ................................................................................................... 2, 21, 22, 24

N.J.S.A. 40A:9-138 ............................................................................................................. 2, 22

N.J.S.A §10:4-8 .................................................................................................................... 4, 10

Section 1985(3) .................................................................................................... 13, 14, 15

§1983, §1985 .................................................................................................................... passim

Rules

Fed. R. Civ. P. 8 ............................................................................................................... 6, 9, 11

Fed. R. Civ. P. 8(a)(2) ........................................................................................................... 6, 7

Fed. R. Civ. P. 12 ..................................................................................................................... 3

Fed. R. Civ. P. 12(B)(6) .............................................................................................. 1, 2, 5, 26

Other Authorities

1996 U.S. Dist. LEXIS 6544, at *13 ........................................................................................ 15

## PRELIMINARY STATEMENT

Defendants, The Borough of Palisades Park (the "Borough"), Chong Paul Kim, (Mayor Kim"); and Suk "John" Min ("Councilman Min")(hereinafter referred to collectively as the "Moving Defendants") hereby move to dismiss with prejudice the Plaintiff's Complaint ( a person currently employed by the Borough of Palisades Park as it Business Administrator, who is currently on paid leave) for failure to state a claim.

Despite painting a colorful tale of political retribution worthy of a screenplay, the Plaintiff cannot escape the fact that his pleadings fall woefully short of adequately alleging any cognizable claim, as it fails to sufficiently plead necessary facts to support the elements to any of the claims asserted. Furthermore, and a glaring fact that is an inescapable death knell to his complaint, is the ultimate fact that his position as Business administrator is regulated by N.J.S.A. 40A: 9-136 et. seq., a patronage position to which our Courts have long held carries no recognized constitutional right of continued employment.

In fact, our Courts have long held that even if such a position was lost, (which is not the situation plead in the matter at bar), for one's expression of political speech, due the nature of the position itself, such actors would be immune from liability for the same. For the reasons set forth below, the Plaintiff's Complaint must be dismissed as a matter of law.

## STATEMENT OF FACTS

1. Plaintiff, David Lorenzo, (hereinafter referred to as "Plaintiff") is the Borough Administrator of the Borough of Palisades Park, New Jersey (the "Borough") and is alleged to be the president of the Palisades Park Democratic Club. Pl. Compl. ¶1.

1

2. Defendant, the Borough of Palisades Park, New Jersey (the "Borough") a body corporate and politic within the State of New Jersey with its principal place of business at 275 Broad Ave, Palisades Park, New Jersey. Pl. Compl. ¶2.

3. Defendant, Chong Paul Kim ("Mayor Kim"), currently serves as the Mayor of the Borough. Pl. Compl.¶3.

4. Defendant, Suk "John" Min ("Councilman Min"), currently serves as a member of the Borough Council for the Borough. Pl. Compl.¶4.

5. Plaintiff has been employed by the Borough prior to 2007 and has held the position of Borough Administrator since 2008. Pl. Compl. ¶8.

6. The powers and duties of the Borough Administrator is governed by N.J.S.A. 40A:9-136.

7. The term of office of Borough Administrator is governed by N.J.S.A. 40A:9-137.

8. The removal/termination of the Borough Administrator is governed by N.J.S.A. 40A:9-138.

9. Plaintiff alleges that political fighting within the Palisades Park Democratic Club led to him instructing unidentifiable persons to place duct tape over unidentified campaign signs of Defendant, Councilman Min's during the 2023 General Election. Pl. Compl. ¶9-14.

10. Plaintiff alleges in conclusionary fashion, and without any supportive or corroborative facts whatsoever, that he was suspended from his position as Borough Administrator by the Borough solely in retaliation for placing duct tape over Councilman Min's signs during the 2023 General Election. Pl. Compl. ¶9-14.

11. Plaintiff further alleges that the suspension was pretextually based upon false or pretextual allegation of his misconduct and the need for an investigation into the same, again in conclusionary fashion and without any factual support for the same. Pl. Compl. ¶9-14.

12. Public records show that Plaintiff caused to be filed in the Bergen County Superior Court, under Docket No.: BER-L-6632-23, a Verified Complaint and Order to Show Cause, to invalidate the actions of the November 2, 2023 Special Meeting that resulted in the very suspension, that the instant complaint is based upon.  See Attached as Exhibit 1 to the Certification of Counsel, a true and complete copy of the Plaintiff's Verified Complaint filed in the Bergen County Superior Court.[1]

13. Public records further show that in response, the Borough submitted a brief and certification in opposition to the Verified Complaint, which outlines all corrective action permitted under the New Jersey Open Public Meetings Act and was taken in order to ensure, that the employment action taken was procedurally consistent with the law. See Attached as Exhibit 2 to the Certification of Counsel, a true and complete copy of the Defendant's Opposition to the Order to Show Cause.

### The November 2, 2023 Special Meeting

14. Public Records show that on October 31, 2023, the Borough Clerk sent the Notice of the Special Meeting to the Bergen Record and the New Jersey Star-Ledger.  Fahrney Cert, Exhibit 2.

15.  Public Records show that on October 31, 2023, notice of the November 2, 2023 Special Meeting was also posted on the Borough's bulletin board at Borough Hall as per the

---

[1] Under Fed. R. Civ. P. 12, a party may present matters outside of the pleadings along with a motion to dismiss, if the "plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  In this matter, the Plaintiff's two complaints are intertwined, and provide clarity as to the background of the matter at bar, and therefore must be considered.  Furthermore, they are "undisputedly authentic" as set forth in Pension Ben. Guar. Corp., supra, 998 F.2d 1196, as they are Court Documents submitted under the penalty of perjury.  Moreover, the Court shall consider exhibits attached to defendant's motion to dismiss to extent that they **were part of public record from plaintiff's prior court proceeding**s.  Clark v. BASF Salaried Employees' Pension Plan, 329 F. Supp. 2d 694 (W.D.N.C. 2004), aff'd as modified sub nom. Clark v. BASF Corp., 142 Fed. Appx. 659 (4th Cir. 2005). [Emphasis added.]

3

requirements of the N.J.S.A §10:4-8 as well as on the Borough's website under Notices. See Fahrney Cert, Exhibit 2.

16. Public Records show that on November 2, 2023, Defendant, Borough of Palisades Park, held a special council meeting at 1:00 PM at which time it passed Resolution 2023-224 and placed the Plaintiff on administrative leave with full pay and benefits. Pl. Compl. ¶15.

17. Public Records show that on November 2, 2023, the Borough of Palisades Park placed the Plaintiff on administrative leave with full pay and benefits under Resolution 2023-224. See Fahrney Cert, Exhibit 2.

**<u>The Corrective Action pursuant to N.J.S.A. 10:4-15(a)</u>**

18. Public Records show that on December 26, 2023, The Borough Council of Palisades Park, by and through the Municipal Clerk, called for a Special Meeting of the Borough Council to be conducted on December 31, 2023. See Fahrney Cert, Exhibit 2.

19. Public Records show that on December 26, 2023, at approximately 1:19 PM, the Borough Clerk sent the Notice of the Special Meeting to be held 4:00 PM on December 31, 2023, to the Bergen Record and New Jersey Star Ledger. See Fahrney Cert, Exhibit 2.

20. Public Records show that on December 26, 2023, Notice of the December 31, 2023 Special Meeting was also posted on the Borough's bulletin board at Borough Hall as per the requirements of the N.J.S.A. §10:4-8 as well as on the Borough's website under Notices. See Fahrney Cert, Exhibit 2.

21. Public Records show that on December 26, 2023, Plaintiff was provided with a Rice Notice via email, regular mail, and hand delivered courier, with the hand delivery being served upon the Plaintiff on December 27, 2023, at 8:38 am. See Fahrney Cert, Exhibit 2.

22. Public Records show that on December 29, 2023, the Notice of the December 31, 2023 Special Meeting was published in the Bergen Record and Star Ledger in accordance with the OPMA. See Fahrney Cert, Exhibit 2.

23. Public Records show that on December 31, 2023, the Mayor and Council for the Borough of Palisades Park held a Special Meeting that fully complied with the OPMA. See Fahrney Cert, Exhibit 2.

24. Public Records show that on December 31, 2023, the Mayor and Council, conducted no discussion on the personnel action in executive session, but discussed other matters, and thereafter in open session voted on Resolution 2023-261 without discussion, passed by a vote of 4-3 with Mayor Kim breaking the tie.  See Fahrney Cert, Exhibit 2.

25. Public Records show that Resolution 2023-261 placed Plaintiff on administrative leave with pay, including all emoluments, effective November 2, 2023, pending the conclusion of the Borough's internal investigation. See Fahrney Cert, Exhibit 2.

26. Plaintiff has not been terminated. Pl. Compl. ¶19.

27. Public Records show that Plaintiff has suffered no harm as he has been placed on administrative leave, with pay and all benefits. See Fahrney Cert, Exhibit 2.

**LEGAL ARGUMENT**

**I.    STANDARD OF REVIEW ON MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

In order to avoid dismissal under Fed. R. Civ. P. 12(b)(6), a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). It must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), abrogated by Bell

5

Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The factual allegations must sufficiently "raise a right to relief above the speculative level." Id. at 555.

The plaintiff cannot simply assert labels and conclusions, offer a formulaic recitation of the elements of a cause of action, or make naked assertions devoid of further factual enhancement. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atlantic Corp., supra, 550 U.S. 557). Fed. R. Civ. P. 8(a)(2) requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While that pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft, supra, 556 U.S. 678 (citing Bell Atlantic Corp., supra, 550 U.S. 555).

Following Twombly's direction, the Third Circuit has acknowledged that situations may arise where "the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Fed. R. Civ. P. 8." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The Court of Appeals further stated that in light of the Supreme Court's ruling in Bell Atlantic Corp., supra, 550 U.S. 544, "Fed. R. Civ. P. 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief," and "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." Id. Thus, "Fed. R. Civ. P. 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Ashcroft, supra, 556 U.S. 79. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Lopez v. Beard, 333 Fed. Appx. 685, 687 (3d Cir. 2009) (quoting Ashcroft, supra, 556 U.S. 678).

To that end, a complaint must set forth sufficiently detailed, credible factual allegations which "raise a right to relief above the speculative level." <u>Bell Atlantic Corp.</u>, <u>supra</u>, 550 U.S. 555. "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Ashcroft</u>, <u>supra</u>, 556 U.S. 678. "If the 'well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' the complaint should be dismissed for failing to 'show that the pleader is entitled to relief' as required by <u>Fed. R. Civ. P.</u> 8(a)(2)." <u>Ashcroft</u>, <u>supra</u>, 556 U.S. 679. "Determining whether the allegations in a complaint are 'plausible' is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" <u>Ashcroft</u>, <u>supra</u>, 556 U.S. 678–79.

Finally, in reviewing the sufficiency of a complaint in the context of a motion to dismiss, courts must not accept bald assertions, untenable inferences, or unsupported legal conclusions disguised as factual allegations. <u>Bell Atlantic Corp.</u>, <u>supra</u>, 550 U.S. 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . [O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (citations omitted).

## II. <u>C</u>ount <u>I</u> (<u>R</u>etaliation) <u>must be dismissed as the</u> <u>P</u>laintiff <u>cannot</u> <u>demonstrate that he was deprived a person of rights, privileges, or</u> <u>immunities secured by the</u> <u>C</u>onstitution <u>or laws of the</u> <u>U</u>nited <u>S</u>tates.

To establish a First Amendment retaliation claim, the Plaintiff must prove three elements: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. <u>Thomas v. Indep. Twp.</u>, 463 F.3d 285, 296 (3d Cir.

2006), quoted in <u>Koren v. Noonan</u>, 586 Fed. Appx. 885, 887–88 (3d Cir. 2014); <u>Green v. Philadelphia Hous. Auth.</u>, 105 F.3d 882, 885 (3d Cir. 1997), <u>as amended</u> (Mar. 13, 1997).  Fail to plead any of the elements set forth above, and the Court must dismiss the complaint as a matter of law.  <u>Ibid.</u>

   **a.  <u>Plaintiff has not engaged in any protected speech.</u>**

   Our Supreme Court has held that a public employee engages in constitutionally protected conduct when he (1) speaks (or associates) as a citizen; (2) the statement (or association) involved a matter of public concern; and (3) the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" based on its needs as an employer. <u>Baloga v. Pittston Area Sch. Dist.</u>, 927 F.3d 742, 753 (3d Cir. 2019).  None of these activities are alleged here.

   As the complaint is written, it is clear that the only protected activity that the Plaintiff alleges to have engaged in, is instructing some unidentified 3rd parties to duct tape over Councilman Min's name on some political campaign signs at some unspecified time.  This is not speech on his part, it is actually speech by those performing the task.

   While denying that the action taken with regard to the Plaintiff's employment was in anyway related to his asserted speech,  even accepting as truth for the limited purposes of evaluating this motion, it is undeniable that the complaint is factually deficient as it failed to plead sufficient facts to establish that directing unidentified persons to duct tape unidentified campaign signs was a protected act of public concern, or a protected speech.  There is no case law that supports this supposition.  Even if the Court considers directing other people to act to be an exercise of First Amendment Speech, which it should not, there is no assertion that the Borough, the Mayor or Councilman Min were aware that the Plaintiff had directed the duct-taping of the signs.

Since the plaintiff has failed to provide the who, what, where, and when necessary to evaluate the nature of the purported speech activity, the complaint is insufficiently pled and must be dismissed as a matter of law pursuant to Fed. R. Civ. P. 8.

Moreover, the Plaintiff's allegation of free speech further lacks support because if this alleged activity took place while Mr. Lorenzo was supposed to be working in his capacity as business administrator for the Borough of Palisades Park, the activity would not be constitutionally protected either.  See Waters v. Churchill, 511 U.S. 661, 668, 114 S. Ct. 1878, 1884, 128 L. Ed. 2d 686 (1994), quoting Connick v. Myers, 461 U.S. 138, 142, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983) and Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968). The complaint is unacceptably void and ambiguous and absence of the facts necessary to evaluate this first element.

Notwithstanding the foregoing, even if the court felt that this first element was sufficiently pled, for the reasons set forth more fully below, it is beyond any reasonable debate that the facts necessary to sustain a prima facie case for retaliatory conduct have not been sufficiently pled. Thus, the complaint must be dismissed.

**b. Plaintiff failed to plead that Defendants took any adverse action against him in direct retaliation for exercising his rights.**

The second element of a First Amendment Retaliation claim is that the defendant took retaliatory action against the plaintiff or threatened action sufficient to deter a person of ordinary firmness from exercising his or her rights. Thomas, supra, 463 F.3d 296, quoted in Koren, supra, 586 Fed. Appx. 887–88; Green, supra, 105 F.3d 885.  Plaintiff also fails to adequately plead this element of a retaliation claim against Defendants.

First, the Plaintiff must show that there was a retaliatory action stemming from his protected conduct **or** threat, coercion, or intimidation, intimating that punishment, sanction, or

adverse regulatory action will follow his politically protected speech. Thomas, supra, 463 F.3d 296, quoted in Koren, supra, 586 Fed. Appx. 887–88; Green, supra, 105 F.3d 885.  Since Plaintiff alleged that his placement on administrative leave was the only possible retaliation, we can ignore the future threat of retaliation element.

Temporarily ignoring the glaring defect, that plaintiff has not alleged any basis for his conclusion that the suspension was in retaliation for his directing that the signs be defaced, he has not even sufficiently alleged that the alleged protected speech preceded the commencement of the alleged retaliation.  It is clear from the facts of public record set forth above, the suspension in question was put into motion days before it took place[2], by virtue of the Rice notice issued to Plaintiff and the notice scheduling a special meeting to discuss inter alia, Plaintiff's employment a few days before any action took place.  Plaintiff's only statement regarding his acts is that they occurred "some time before November 2, 2023."

Critically, the adverse employment action by Defendants cannot be a retaliatory because Plaintiff fails to plausibly show that the Plaintiff's conduct prompted the retaliation.  Thomas, supra, 463 F.3d 296, quoted in Koren, supra, 586 Fed. Appx. 887–88; Green, supra, 105 F.3d 885.

 Plaintiff simply sets forth his opinion that he was suspended because of his political speech. In fact, the Plaintiff does not directly correlate the "political activity" of instructing others to duct-tape signs with his placement on administrative leave.  The Plaintiff sets no timeline to properly show that his actions preceded the Borough taking steps to place him on administrative leave.  Simply put, how can the adverse action be a deterrent of any conduct if the adverse action

---

[2] The facts are clear.  On October 31, 2023, the Borough Clerk sent the Notice of the Special Meeting and on October 31, 2023, notice of the November 2, 2023 Special Meeting was also posted on the Borough's bulletin board at Borough Hall as per the requirements of the N.J.S.A §10:4-8 as well as on the Borough's website under Notices.  See Fahrney Cert, Exhibit 2.  That same day, the Plaintiff received a Rice Notice, notifying him that action would be taken regarding his position as Borough Administrator.  See Fahrney Cert, Exhibit 2.  Thus, in order to establish a claim, the Plaintiff's alleged speech must have occurred before October 31, 2023.

preceded the conduct. The Plaintiff's claims are vague, unsupported, and lack the necessary foundation under Ashcroft and Twombly.  Therefore, the Plaintiff's vague assertions that he engaged in First Amendment Speech and was placed on administrative leave are insufficient.

As set forth in the standards for a 12(b)(6) motion, the plaintiff cannot simply assert labels and conclusions, offer a formulaic recitation of the elements of a cause of action, or make naked assertions devoid of further factual enhancement. Ashcroft, supra, 556 U.S. 678 (citing Bell Atlantic Corp., supra, 550 U.S. 555, 557). Just as the complaint in *Phillips* was deficient, here the factual detail in Plaintiff's complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Fed. R. Civ. P. 8.  The Plaintiff can't even say when he engaged in his political speech, despite the fact that he ordered the signs to be covered – this is the quintessential deficient complaint that must be dismissed under Fed. R. Civ. P. 8.

Furthermore, the Plaintiff cannot claim that he needs discovery, as our Courts have clearly held that where a Plaintiff is in possession of the knowledge, and fails to plead that knowledge, he "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Ashcroft, supra, 556 U.S. 678–79.

As such, the Plaintiff has failed to plead that Defendants took any adverse action against him sufficient to deter a person of ordinary firmness from exercising his rights, and the Plaintiff's Complaint must be dismissed as a matter of law for failure to plead a claim upon which relief can be granted.

**c.  Plaintiff's Complaint fails to set forth a causal link between the constitutionally protected conduct and the retaliatory action.**

The third element of a First Amendment Retaliation claim requires the Plaintiff to plead a causal nexus between the protected activity and the retaliation. Rink v. Ne. Educ. Intermediate Unit 19, 717 Fed. Appx. 126, 133 (3d Cir. 2017); Lauren W. ex rel. Jean W. v. DeFlaminis, 480

F.3d 259, 267 (3d Cir. 2007); <u>McAndrew v. Bucks Cnty. Bd. of Comm'rs</u>, 982 F. Supp. 2d 491, 505 (E.D. Pa. 2013).

Even if the Plaintiff's complaint sufficiently contained facts to support the first two elements, which it does not, it still would have to be dismissed as it has woefully fails to plead facts establishing that there was a causal connection between the speech and the administrative leave beyond mere conjecture.

As a matter of common sense, in order to show a causal connection between a protected activity and alleges retaliatory conduct, the plaintiff must show that the parties allegedly engaging in the retaliatory conduct were aware of the alleged protected activities prior to engaging in the alleged retaliatory actions, because you cannot engage in retaliatory conduct retroactively.

In the case at bar, the plaintiff's complaint fails not only to explain how or upon what the plaintiff bases his belief that the activity engaged in by the moving defendants was retaliatory, but he also fails to explain and/or allege how the moving defendants were aware of his purported instruction to 3rd parties to duct tape over Councilman Min's name or were even aware that Councilman min's name was duct taped over in the first place, at some point in time prior to the alleged retaliatory action.  Thus, he cannot establish the required nexus under *Rink*, <u>Lauren W. ex rel. Jean W.</u>, <u>supra</u>, 480 F.3d 259, or <u>McAndrew</u>, <u>supra</u>, 982 F. Supp. 2d 505.

At best, the complaint only makes allegations in a conclusionary fashion and infers these facts, by reading that sometime in 2023 Plaintiff directed others to duct tape over Min's name on political signs, and as a result, Plaintiff was placed on administrative leave.  Our courts have clearly held that conclusionary statements of this nature are insufficient pleadings and warrant dismissal. <u>Bell Atlantic Corp.</u>, <u>supra</u>, 550 U.S. 544*;* <u>Ashcroft</u>, <u>supra</u>, 556 U.S. 678*.*

The fact remains that the Plaintiff's Complaint lacks the factual support that the Borough's actions followed the Plaintiff's or *vice versa*.  The Plaintiff has direct knowledge of when these events took place, and selectively chose not to plead the crucial facts.  Despite the fact that the administrative leave occurred after the alleged covering of the signs, it is reasonable to affirm that the Borough noticed, and intended to take action long before the Plaintiff's alleged speech occurred.  Unless the Plaintiff presents concrete assertions with factual support that he engaged in the speech, and then the Borough took action without any legitimate rational basis, only then could the Plaintiff's complaint survive.

For the reasons set forth above, the Plaintiff's Complaint must be dismissed as a matter of law for failure to plead a claim upon which relief can be granted.

### III.    THE SECOND COUNT OF PLAINTIFF'S COMPLAINT PLEADS A 42 U.S.C. §1985 CONSPIRACY CLAIM AGAINST MAYOR KIM AND COUNCILMAN MUST BE DISMISSED AS A MATTER OF LAW.

Plaintiff has alleged in Count II of his Complaint a conspiracy among Defendants Kim and Min, to deprive Plaintiff of his First Amendment right to freedom of speech and association, and in turn, deprive him of his position as Borough Administrator.  For the reasons set forth below, no such claim has been properly established.

A plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997), as amended (May 15, 1997) (citing United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 828–29, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983)). Section 1985(3) actions are limited to conspiracies predicated on

"racial, or perhaps otherwise class based, invidiously discriminatory animus." Lake, supra, 112 F.3d 685 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971)).

### a. **Plaintiff fails to allege any race-based or class based discriminatory animus.**

To state a conspiracy claim under statute authorizing cause of action for conspiracy to interfere with civil rights, a plaintiff must allege (1) some racial or other class-based discriminatory animus underlying the defendants' actions, and (2) that the conspiracy was aimed at interfering with the plaintiff's protected rights.  Porter v. Selsky, 287 F. Supp. 2d 180 (W.D.N.Y. 2003), aff'd sub nom. Porter v. Coughlin, 421 F.3d 141 (2d Cir. 2005); Davila v. Secure Pharmacy Plus, 329 F. Supp. 2d 311 (D. Conn. 2004); Knight v. City of New York, 303 F. Supp. 2d 485 (S.D.N.Y. 2004), aff'd, 147 Fed. Appx. 221 (2d Cir. 2005); Moire v. Temple Univ. Sch. of Med., 613 F. Supp. 1360 (E.D. Pa. 1985), aff'd, 800 F.2d 1136 (3d Cir. 1986).

US federal law protects individuals from discrimination or harassment based on the following nine protected classes: sex (including sexual orientation and gender identity), race/color, age, disability, national origin, religion/creed, or genetic information. See US Civil Rights Act of 1964, Age Discrimination Act of 1967 and the Americans with Disabilities Act of 1990.

In Farber v. City of Paterson, 440 F.3d 131 (3d Cir. 2006), the Third Circuit found that the victim of a conspiracy motivated by race discrimination may bring a §1985(3) claim, under Griffin, supra, 403 U.S. 102, while the victim of mere commercial or economic animus may not. Farber v. City of Paterson, 440 F.3d 131, 138 (3d Cir. 2006); United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO, supra, 463 U.S. 838.

Moreover, there are a myriad of cases that have fully established that political affiliation is not a protected class.  D'Aurizio v. Palisades Park, 963 F. Supp. 378, 385–86 (D.N.J. 1997), aff'd

sub nom. D'Aurizio v. Borough of Palisades Park, 151 F.3d 1024 (3d Cir. 1998), Stephens v. Kerrigan, CIV. A. 95-615, 1996 WL 256581 (E.D. Pa. May 15, 1996), aff'd in part, rev'd in part, 122 F.3d 171 (3d Cir. 1997), 1996 U.S. Dist. LEXIS 6544, at *13 (political affiliation cannot support a § 1985(3) claim), *aff'd on other grounds,* 122 F.3d 171, 184 (3d Cir.1997), *and* Deblasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell, 820 F. Supp. 876, 885 (D.N.J. 1993), aff'd in part, rev'd in part, 53 F.3d 592 (3d Cir. 1995).

Moreover, the Farber court found that allowing § 1985(3) to reach politically motivated conspiracies would involve the federal courts in policing the political arena in ways that the drafters of § 1985(3) could not have intended. As Judge Pollak long ago explained, political patronage "plays a major role in all politics," and while *Elrod* and Branti v. Finkel, 445 U.S. 507, 100 S. Ct. 1287, 63 L. Ed. 2d 574 (1980), place constitutional limits on this role, "it can be reasonably assumed that private political actors will continue to press government officials to exercise such partisan leeway as the hiring and firing processes still permit, conformably with the Court's decisions." Nilan v. De Meo, 575 F. Supp. 1225, 1227 (E.D. Pa. 1983). Permitting § 1985(3) to reach politically motivated conspiracies would effectively outlaw all terminations based on political affiliation.  Farber v. City of Paterson, 440 F.3d 131, 142 (3d Cir. 2006).

In the matter at bar, the Plaintiff has not sufficiently pled any race based or class based (under any of the aforementioned acts) discriminatory animus.  The only rational interpretation of the Complaint is that Plaintiff bases his entire claim on his affiliation with the Democratic Club of Palisades Park.  Pl. Compl. ¶1.  The complaint is absent of any other class or animus that forms the basis for this complaint.  Pl. Compl. ¶1-12.  This is precisely the type of case that Farber, Elrod, Branti, and Nilan prohibit.

Thus, as set forth in <u>Farber</u>, <u>supra</u>, 440 F.3d 131 and its progeny, the Plaintiff fails to sufficiently allege that a racial or other class-based discriminatory animus underlying the defendants' actions, and  that the conspiracy was aimed at interfering with the plaintiff's protected rights, and as such, the Plaintiff's complaint must be dismissed as a matter of law.

### b.  **Plaintiff fails to plead a prima facie case for conspiracy.**

As set forth above, a prima facie claim for §1985 requires plaintiff to establish that Defendants committed an act in furtherance of the conspiracy; and caused an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. <u>Lake</u>, <u>supra</u>, 112 F.3d 685

As argued below, the Plaintiff cannot establish any injury to him or the deprivation of any right or privilege as he did not engage in any protected speech (see Point II); nor is his employment as Borough Administrator a constitutionally protected position (see Point IV).

Even if the Mayor and Min coordinated the special meeting, there is no evidence that even one of them retaliated or planned to retaliate against the Plaintiff for his direction of defacing political signs, let alone both of them.  There is no factual claim that that they even spoke to each other about the signs.  The plaintiff has provided no facts to support such a claim, only his self-interested conclusion.

Since §1985 claims require that all the elements be sufficiently pled, the Court need not even entertain the claim and thereby permit Plaintiff to conduct a fishing expedition in discovery. The Plaintiff's claims for Civil Conspiracy under §1985 in the complaint must be dismissed as a matter of law.

**IV.** **EVEN IF PLAINTIFF HAD SUFFICIENTLY PLEAD A §1983, §1985 AND/OR COMMON LAW CONSPIRACY CLAIMS, THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AND THE COMPLAINT MUST BE DISMISSED AS A MATTER OF LAW**

It has long been established that state actors, in this case the Borough and its employees, are protected by qualified immunity so long as their allegedly unlawful acts **were objectively reasonable**. Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). [Emphasis added.] Qualified immunity is a defense against a claim alleging deprivation of a Constitution right by a law enforcement officer. See Pierson v. Ray, 386 U.S. 547, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967). It is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

Qualified immunity is "an immunity from suit rather than a mere defense to liability." Id. Moreover, qualified immunity, like absolute immunity, "is effectively lost if a case is erroneously permitted to go to trial." Id. The purpose for qualified immunity is to:

> [permit] courts [to] expeditiously...weed out suits, which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time-consuming preparation to defend the suit on its merits. One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit. Siegert v. Gilley, 500 U.S. 226, 232, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991).

Accordingly, the Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991).

Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. Malley v. Briggs, 475 U.S. 335, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986). As such, the **protection afforded a defendant should be denied only in the most exceptional instances**.

Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994), abrogated by Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). [Emphasis added].

If a public official could have reasonably believed that his or her acts were lawful under the then-established law and current information, that official would be entitled to qualified immunity from liability. Ryan v. Burlington Cnty., N.J., 889 F.2d 1286, 1292 (3d Cir. 1989); see also Harlow, supra, 457 U.S. 818; Kirk v. City of Newark, 109 N.J. 173, 184 (1988). When considering whether an alleged right is "clearly established," the Court must bear in mind that "defendants are neither constitutional lawyers nor federal judges." Rappa v. Hollins, 991 F. Supp. 367, 382 (D. Del. 1997), aff'd, 178 F.3d 1280 (3d Cir. 1999).

In order to overcome an assertion of qualified immunity raised in a Rule 12(b)(6) motion, a complaint "must allege facts showing that the conduct of [the] defendant (1) violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." George v. Rehiel, 738 F.3d 562, 572 (3d Cir. 2013).5 Courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first. Ashcroft v. al-Kidd, 563 U.S. 731, 735, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011).

> **a. New Jersey Law has well established that Plaintiff's position is a political patronage position and subject to serve at the pleasure of the Governing Body,**

While the moving defendants adamantly deny that the plaintiff's suspension had anything to do with his alleged political speech, even if it did, they would be immune from liability. In fact, as more thoroughly set forth below, they could have even terminated his employment for the same, without liability.

To overcome qualified immunity, a plaintiff must "'identify a case where an [official] acting under similar circumstances [as Defendants] was held to have violated the [First]

Amendment.'" <u>D.C. v. Wesby</u>, 583 U.S. 48, 138 S. Ct. 577, 590, 199 L. Ed. 2d 453 (2018) (quoting <u>White v. Pauly</u>, 580 U.S. 73, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017)). After all, "[i]t is only when both the theory of liability and its application to the established facts are sufficiently plain that the legal question of liability is beyond legitimate debate and a plaintiff can defeat a qualified immunity defense." <u>Sauers v. Borough of Nesquehoning</u>, 905 F.3d 711, 719 (3d Cir. 2018).  In essence, the Plaintiff must establish by "controlling authority" or "robust consensus of cases of persuasive authority" placed "beyond debate" **that the conduct by the Defendants violates any constitutional right which strips the Defendants of qualified immunity**. <u>Ashcroft</u>, <u>supra</u>, 563 U.S. 741. [Emphasis added.]

Fatal to the Plaintiff's complaint is that courts have repeatedly held that political affiliation is a proper consideration in the hiring and firing of government positions where political cohesiveness or patronage is necessary. <u>Elrod v. Burns</u>, 427 U.S. 347, 367–68, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976); <u>Branti</u>, <u>supra</u>, 445 U.S. 518; <u>Ness v. Marshall</u>, 660 F.2d 517, 521 (3d Cir. 1981); <u>Rutan v. Republican Party of Illinois</u>, 497 U.S. 62, 75, 110 S. Ct. 2729, 111 L. Ed. 2d 52 (1990).

"The Supreme Court has decided a trilogy of cases that governs decisions in political patronage cases." <u>Goodman v. Pennsylvania Tpk. Comm'n</u>, 293 F.3d 655, 663 (3d Cir. 2002). In <u>Elrod</u>, <u>supra</u>, 427 U.S. 367–68, the plurality held that discharging certain public employees solely on the basis of their political affiliation violates their First Amendment right to free association, **but exempted from this prohibition the politically motivated discharge of persons holding "policymaking positions."** Recognizing that "[t]he nature of the responsibilities is critical," the plurality in <u>Elrod</u>, <u>supra</u>, 427 U.S. 347 observed that "[a]n employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position," and that

"consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals." <u>Id.</u> at 367–68. "Non-policymaking individuals," by contrast, "usually have only limited responsibility and are therefore not in a position to thwart the goals of the in-party." <u>Id.</u> at 367. [Emphasis added.]

More specifically, the Third Circuit held that the discharge of a confidential, policy - making employee, such as a municipal administrator who serves at the pleasure of the governing body, could be terminated for purely political reasons. <u>Elrod</u>, <u>supra</u>, 427 U.S. 347; <u>Dyke v. Otlowski</u>, 154 N.J. Super. 377 (Ch. Div. 1977); <u>Cabarle v. Governing Body of Pemberton Twp.</u>, 167 N.J. Super. 129, 139 (Law. Div. 1979), <u>aff'd sub nom.</u> <u>Cabarle v. Governing Body of Twp. of Pemberton</u>, 171 N.J. Super. 586 (App. Div. 1980).

Four years later, in <u>Branti</u>, <u>supra</u>, 445 U.S. 518, the Court refined the Elrod analysis by holding that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." See also <u>Ness</u>, <u>supra</u>, 660 F.2d 521 (noting that Branti calls for a "functional analysis" and finding that "should a difference in party affiliation be highly likely to cause an official to be ineffective in carrying out the duties and responsibilities of the office, dismissals for that reason would not offend the First Amendment"). And then in <u>Rutan</u>, <u>supra</u>, 497 U.S. 75, the Court extended Elrod and Branti by holding that promotions, transfers, recalls, and hiring decisions involving public employees may not be based on party affiliation and support unless the government can show that party affiliation is a proper requirement for the particular position.

In <u>Cabarle</u>, <u>supra</u>, 167 N.J. Super. 139, the Court held that the role of administrator is not only a political patronage   The position of administrator is one of significance and sensitivity, but

a conclusion also underlined by the language of Pemberton Township's ordinance creating the office. It provides that the administrator is required to have executive and administrative abilities with special qualifications in government affairs and is to be the chief administrative officer of the township. Cabarle, supra, 167 N.J. Super. 139.

In Perry v. Sindermann, 408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972) and Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972), issued the same day, the Supreme Court held that in order to have a property interest in a benefit that is protected by the Fourteenth Amendment, a plaintiff must show "more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents of State Colleges, supra, 408 U.S. 577.

Moreover, in Reiger, the Third Circuit held that a municipal administrator who serves at the pleasure of the governing body pursuant to N.J.S.A. 40A:9–137 is not entitled to constitutionally protected rights to his employment and thus would not strip the governing body of qualified immunity.   Rieger v. Twp. of Fairfield, 121 Fed. Appx. 944, 946 (3d Cir. 2005).

While the Moving Defendants deny that the suspected reason for placing the Plaintiff on administrative leave was politically based, Plaintiff's free association and retaliation claims should be dismissed with prejudice on the basis of qualified immunity because,  even if Defendants did terminate or suspend or place Plaintiff on administrative leave it was "objectively legally reasonable" for them to do so as the position of borough administrator is a patronage position and subject to serve at the governing body's pleasure. See Elrod, supra, 427 U.S. 367–68; Branti, supra, 445 U.S. 518; Ness, supra, 660 F.2d 521; Rutan, supra, 497 U.S. 75.

In other words, even if the Plaintiff did engage in political speech, which he did not, the Defendants' conduct was "objectively legally reasonable" as they are permitted to discharge (even

though the Plaintiff has not been discharged) the Borough Administrator for any reason whatsoever, including political patronage.  N.J.S.A. 40A:9–138.

In short, the Plaintiff cannot, and does not establish any constitutionally protected interest in his position as Borough Administrator that would strip the Defendants of the authority and power to either terminate or place the Plaintiff on administrative leave under N.J.S.A. 40A:9–137.

This hurdle is insurmountable because the Third Circuit has repeatedly held that municipal administrators can be dismissed on the basis of their political affiliations without offending the First Amendment, and every other Circuit Court of Appeals to have faced the question has reached the same conclusion.  In fact, the alleged decision to dismiss an employee based on political patronage is precisely the sort that the doctrine of qualified immunity was designed to protect. See Elrod, supra, 427 U.S. 367–68; Branti, supra, 445 U.S. 518; Ness, supra, 660 F.2d 521; Rutan, supra, 497 U.S. 75.

Here, the law is clear.  The Borough Administrator is a patronage position and subject to serve at the pleasure of the Governing Body.  As set forth in N.J.S.A. 40A:9-137 and 40A:9-138, it is without question that the Plaintiff has no constitutional right to his position as Borough Administrator and that the moving defendants would be immune from all liability associated with the Plaintiff's suspension, even if it were related to his alleged political speech.

V.     **ANY CLAIM AGAINST THE MAYOR, AND COUNCILMAN MIN RELATED TO THE RESOLUTIONS PLACING PLAINTIFF ON ADMINISTRATIVE LEAVE, MUST BE DISMISSED AS A MATTER OF LAW BY VIRTUE OF LEGISLATIVE IMMUNITY.**

It is black letter law that local legislators are immune from suit under §1983 for their legislative activities; (2) absolute legislative immunity attaches to all actions of local officials taken in sphere of legitimate legislative activity. Bogan v. Scott-Harris, 523 U.S. 44, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998). Our United States Supreme Court has never relented from this legal doctrine.

See also, <u>Acierno v. Cloutier</u>, 40 F.3d 597, 615 (3d Cir. 1994) [holding that County Council members are entitled to absolute legislative immunity]; <u>Aitchison v. Raffiani</u>, 708 F.2d 96, 99–100 (3d Cir. 1983) [holding that a mayor and a borough attorney were entitled to legislative immunity with respect to their involvement in the passage of an ordinance] and <u>Gallas v. Supreme Court of Pennsylvania</u>, 211 F.3d 760, 773–74 (3d Cir. 2000) [holding that officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions].

Even more on point is that the United States Supreme Court unanimously held in <u>Bogan</u>, <u>supra</u>, 523 U.S. 44 that legislators are immune for discrimination claims in voting and passing resolutions to eliminate certain patronage positions. In <u>Bogan</u>, <u>supra</u>, 523 U.S. 44, the Supreme Court held that the legislative acts of Fall Rivers' mayor and city council's vice-president enjoyed absolute immunity from liability claims for discrimination leveled under 42 U.S.C.A. §1983 when they voted to eliminate certain city jobs. The Court found that legislative immunity "has long been recognized in Anglo–American law" and has "a venerable tradition." <u>Bogan</u>, <u>supra</u>, 523 U.S. 48–49. The "acts of voting for an ordinance were, in form, quintessentially legislative," id., <u>Bogan</u>, <u>supra</u>, 523 U.S. 55, as were all "integral steps in the legislative process." <u>Ibid.</u>

It is uncontroverted that the passing of an Ordinance or Resolution by the governing body is a legislative function. <u>Freedom from Religion Found., Inc. v. Saccone</u>, 894 F. Supp. 2d 573, 583 (M.D. Pa. 2012) quoting <u>Scicchitano v. Cnty. of Northumberland</u>, 112 F. Supp. 3d 293, 300 (M.D. Pa. 2015) ("It is pellucidly clear that resolutions, whether passed by a single house or both, whether creating legally binding obligations or not, fall squarely within the scope of absolute legislative immunity from suit.")

Thus, for the same reasons in <u>Bogan</u>, <u>supra</u>, 523 U.S. 44,  the Plaintiff's complaint must be denied as a matter of law, with prejudice, as the actions of the Mayor and Councilman Min are

subject to legislative immunity.  Both Defendants acted in their capacity as legislative members of the Borough, and in doing so passed valid Resolutions to place the Plaintiff on Administrative Leave in accordance with N.J.S.A. 10A:4-6 et seq., (the Open Public Meetings Act) and N.J.S.A. 40A:9-137.

As such, all Counts against Mayor Kim and Councilman Min, both in their individual and official capacity, must be dismissed as a matter of law under the doctrine of legislative immunity.

**VI.**     **ALL §1983 CLAIMS AGAINST THE BOROUGH OF PALISADES MUST BE DISMISSED AS A MATTER OF LAW.**

[A] local government may not be sued under §1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Further, for a municipality to be held liable under the theory of *respondeat superior*, the constitutional harm alleged must be caused by a municipal policy or custom. Monell, supra, 436 U.S. 658 (1978). "Plaintiffs who seek to impose liability on local governments under §1983 must prove that action pursuant to official municipal policy caused their injury." Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011)(citations and internal quotations omitted).

Failure to allege violation of a specific constitutional right is especially problematic given that the purpose of modern pleading is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, supra, 355 U.S. 47. [Emphasis added].

Here, for the reasons set forth above, the Plaintiffs fail to show any constitutional violation in the first place, never mind that anyone from the Borough engaged in a pattern of practice or promulgated customary policy or procedure of discrimination against the Plaintiff's class [which is not articulated].

24

As set forth in Point II and IV, Plaintiff fails to state a claim upon which relief can be granted on any theory of §1983 Liability, and therefore, the Plaintiff's Complaint should be dismissed as a matter of law with prejudice.

**VII.   THE THIRD COUNT OF PLAINTIFF'S COMPLAINT (COMMON LAW CONSPIRACY CLAIM) AGAINST MAYOR KIM AND COUNCILMAN MUST BE DISMISSED AS A MATTER OF LAW.**

Plaintiff has alleged in Count III of his Complaint a common law conspiracy among Defendants Kim and Min, to deprive Plaintiff of his First Amendment right to freedom of speech and association, and in turn, deprive him of his position as Borough Administrator.

For the same exact reasons set forth in Point III, the plaintiff's claim for common law conspiracy must be dismissed for failure to sufficiently plead facts to support a claim of common law conspiracy.  Notably, the Plaintiff has not pled a single fact that Defendants committed any unlawful act in furtherance of the conspiracy, or that they deprived Plaintiff of any right or privilege under the law. Digene Corp. v. Ventana Med. Sys., Inc., 476 F. Supp. 2d 444, 446 (D. Del. 2007).

As argued above, the Plaintiff cannot establish any unlawful act (see Point III); nor is his employment as Borough Administrator a constitutionally protected position (see Point IV). Thus, the plaintiffs claim for common law conspiracy must be dismissed and the moving defendants hereby incorporate those portions of the brief by reference herein.

25

## **CONCLUSION**

For the foregoing reasons, the Court should grant the Defendants' Motion to Dismiss the Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to <u>Fed. R. Civ. P.</u> 12(b)(6) and dismiss the Complaint with prejudice as a matter of law.

Respectfully Submitted,

R. Scott Fahrney, Esq.

Dated: January 16, 2024