THE LAW OFFICES OF RICHARD MALAGIERE
A Professional Corporation
250 Moonachie Road, Suite 300A
Moonachie, New Jersey 07074
(201) 440-0675
Richard Malagiere
Leonard E. Seaman
Attorneys for Plaintiff, David J. Lorenzo

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID J. LORENZO<br><br>Plaintiffs,<br><br>v.<br><br>THE BOROUGH OF PALISADES PARK, NEW JERSEY; CHONG PAUL KIM (individually and in his official capacity as Mayor of the Borough of Palisades Park, New Jersey); and SUK "JOHN" MIN (individually and in his official capacity as a member of the Borough Council Borough Council of Palisades Park, New Jersey); STEPHANIE S. JANG (individually and in her official capacity as a member of the Borough Council of Palisades Park, New Jersey); and JAE PARK (individually and in his official capacity as a member of the Borough Council of Palisades Park, New Jersey)<br><br>Defendants. | Civil Action No. 2:23-cv-21849<br><br>**FIRST AMENDED COMPLAINT** |

**EXHIBIT B**

Plaintiff, David J. Lorenzo, as and for his first amended complaint against defendants, the Borough of Palisades Park, New Jersey; Chong Paul Kim (individually and in his official capacity as Mayor of the Borough of Palisades Park, New Jersey); and Suk "John" Min (individually and in his official capacity as a member of the Borough Council Borough Council of Palisades Park, New Jersey) Stephanie S. Jang (individually and in her official capacity as a member of the Borough Council of Palisades Park, New Jersey); and Jae Park (individually and in his official capacity as a member of the Borough Council of Palisades Park, New Jersey) alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, David J. Lorenzo, is an individual residing within the State of New Jersey. Mr. Lorenzo was, at all times relevant hereto, is the Borough Administrator of the Borough of Palisades Park, New Jersey and is the president of the Palisades Park Democratic Club (the "Democratic Club"), a duly formed "continuing political committee" within the meaning of *N.J.S.A.* 19:44A-3(n).

2.      Defendant, the Borough of Palisades Park, New Jersey (the "Borough") a body corporate and politic within the State of New Jersey with its principal place of business at 275 Broad Ave, Palisades Park, New Jersey 07650. The Borough is organized under the State of New Jersey's borough form of municipal government. *N.J.S.A.* 40A:60-1 to -8.1.

2

**EXHIBIT B**

3.      Defendant, Chong Paul Kim ("Mayor Kim"), currently serves as the Mayor of the Borough. Mayor Kim is sued both individually and in his official capacity. Mayor Kim is a resident of the Borough and acts or otherwise does business at 275 Broad Ave, Palisades Park, New Jersey 07650.

4.      Defendant, Suk "John" Min ("Councilman Min"), currently serves as a member of the ~~Borough Council~~Borough Council for the Borough. Councilman Min is sued both individually and in his official capacity. ~~Councilman Min's current term as a council member is due to expire on December 31, 2023.~~ Councilman ~~Kim~~ Min was appointed in or about January 2023 to ~~is currently~~ serv~~ing an unexpired~~ the remainder of ~~council~~the term of the council seat Mayor Kim held before he was sworn in as mayor on January 1, 2023. The term of office for that seat will expire on December 31, 2024. Councilman Min was ~~and is~~ a candidate for ~~re-~~election to different seat on the Brough Council in the November 2023 general election. The polls for that election were open for an ~~in which~~ early voting period from October 28 through November 5, 2023 ~~is ongoing and which will~~and ~~conclude at the close of~~ an in-~~-~~person voting day on November 7, 2023. Councilman Min was declared the winner of that election and currently serves as a member of the Borough Council. Councilman Min is a resident of the Borough and acts or otherwise does business at 275 Broad Ave, Palisades Park, New Jersey 07650.

**EXHIBIT B**

5.      Defendant, Stephanie Jang ("Councilwoman Jang"), currently serves as a member of the Borough Council for the Borough. Councilwoman Jang is sued both individually and in her official capacity. Councilwoman Jang is a resident of the Borough and acts or otherwise does business at 275 Broad Ave, Palisades Park, New Jersey 07650.

4.6.    Defendant, Jae Park ("Councilman Park") at all times relevant hereto served as a member of the Borough Council for the Borough. Councilman Park did not run for re-election in 2023 and his term of office expired on December 31, 2023. Councilman Park is a resident of the Borough and, at all times relevant hereto, acted or otherwise did business at 275 Broad Ave., Palisades Park, New Jersey 07650.

5.7.    This Court has jurisdiction over this matter pursuant to 28 *U.S.C.* § 1331 over all claims alleged in Count One and Count Two as they arise under the Constitution and laws of the United States including 42 *U.S.C.* §§ 1983 and 1985.

6.8.    This Court has supplemental jurisdiction over this matter pursuant to 28 *U.S.C.* § 1367 over all other claims as they are so related to the claims within original jurisdiction that they form the same case or controversy under Article III of the Constitution.

7.9.    Venue is appropriate pursuant to 28 *U.S.C.* § 1391(b)(1) and (2) as all defendants reside in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

4

**EXHIBIT B**

## FACTS COMMON TO ALL COUNTS

10.    The Borough's mayor is elected at-large to a four-year term. Six council members are elected at-large to staggered three-year terms. *N.J.S.A.* 40A:60-2.

11.    Mayor Kim is the head of the municipal government. He presides at meetings of the Borough Council and may vote to break a tie. He nominates, with the advice and consent of the Borough Council, all subordinate officers of the Borough, unless the specific terms of the general law of the State of New Jersey clearly require a different appointment procedure. He is required to see to it that the laws of the State of New Jersey and the ordinances of the Borough are faithfully executed and to recommend to the Borough Council such measures as he may deem necessary or expedient for the welfare of the Borough. *N.J.S.A.* 40A:60-5.

12.    In addition to being the legislative body of the Borough, the Borough Council has all the executive responsibilities of the municipality not placed by law in the office of the mayor. *N.J.S.A.* 40A:60-6.

8.    Plaintiff ~~has been~~was employed by the Borough prior to 2007 and ~~has~~ held the position of Borough Administrator ~~since~~from  2008 through 2024. At all times during his employment, plaintiff ~~has~~met or exceeded job performance expectations and ~~has~~received exemplary performance reviews as reflected in salary increases over the years.

13.

5

**EXHIBIT B**

14.    On December 16, 2020 the Borough adopted Resolution 2020-295 by a unanimous vote of all council members (including Mayor Kim[1]). Resolution 2020-295 authorized the Borough to enter into a contact with plaintiff for his continued employment as Borough Administrator for a term of five years through 2025.

9.

1.15.  As part of its political activities in matters of public concern, the Democratic Club supports, endorses, and campaigns on behalf of selected candidates for elected office within the Borough.

2.16.  At various times prior to November 2, 2023, the Democratic Club supported, endorsed, and campaigned for Councilman Min in his bid to be reelected to the Borough CouncilBorough Council in the 2023 general election.

3.17.  However, at some time thereafter, and prior to November 2 on or about October 17, 2023, the Democratic Club chose to withdraw its support and endorsement of Councilman Min and cease campaigning on behalf of Councilman Min because the Democratic Club and its individual members, including, but not limited to Pplaintiff, determined that Councilman Min lacked the skills and fitness to serve on the Borough CouncilBorough Council and was prepared to act on political views in a manner contrary to the views and goals of the Democratic Club.

---

[1] In December 2020, Mayor Kim had not yet been elected as the Borough's mayor and was serving as a member of the Borough Council.

**EXHIBIT B**

4.18.  As a result of the foregoing, plaintiff directed that campaign signs placed throughout the Borough by the Democratic Club bearing the name of Councilman Min along with the names of two other candidates for the ~~Borough Council~~Borough Council be altered with "duct tape" to obscure Councilman Min's name to indicate the withdrawal of the Democratic Club's endorsement and support for him. An example of a yard sign after that was done appears below.



19.    Plaintiff personally placed "duct" tape over Councilman Min's name in the manner illustrated above on campaign signs ~~he placed~~ throughout the Borough.

20.    Mayor Kim is a political ally and supporter of Councilman Min.

7

**EXHIBIT B**

21.    On or about October 17, 2023, Mayor Kim discovered campaign signs with "duct tape" over Councilman Min's name in the manner ~~set forth in manner~~ illustrated above.

22.    Mayor Kim sent an email to James Rotundo on October 17, 2023 at 4:47 PM from his personal email account (paulckim74[at]gmail[dot]com). Mr. Rotundo is and was, at all times relevant hereto, a member of the Bergen County Democratic County Committee and served as the municipal chairman of the Palisades Park Democratic Municipal Committee. Mayor Kim copied plaintiff, Austin Ashley (the Palisades Park Democratic Club Treasurer and the Borough's Deputy Borough Administrator), Councilman Min and others on that email. In that October 17, 2023 email, Mayor Kim complained about this action and demanded retribution against those who had done it, saying:

> It has come to my attention that the election yard signs now posted in Palisades Park by our Democratic Club have masking duct tape across our Candidate Min's name.
>
> ***
>
> I would like to ask you and President Lorenzo, who is in charge of posting our signs, to immediately get to the bottom of this. I hope this is not done by our own club leadership. I will also request whoever it may be, he or she has to be held accountable for sabotaging this election for the Democratic Party of Palisades Park.

~~10.~~

23.    Moments later, at 5:03 PM on October 17, 2023, Mayor Kim sent an email to Anthony Espino, the Chief of Police of Palisades Park, from his government

8

**EXHIBIT B**

email account (mayorkim[at]palisadesparknj[dot]us). In that email, Mayor Kim reported that "election signs are being desecrated and vandalized in Palisades Park" and demanded that Chief Espino get back to him following an investigation.

24.    The following morning, on October 18, 2023 at 8:28 AM, Mayor Kim sent an email to plaintiff copying Mr. Rotundo, Ashley, and others from his personal email account. In that email, Mayor Kim ~~expressed his opinion that~~accused plaintiff and Ashley ~~were~~of "putting the same silver duct tape on these signs~~are it would have been delivered to you or him.~~." Mayor Kim went on in that email to state that plaintiff was "killing the 2023 Democratic campaign. Hope you are proud of yourself."

25.    In another email sent 38 minutes later, again from his personal email account, Mayor Kim told plaintiff "Dave, I implore you~~r~~ for the last time to stop desecrating our Democratic yard signs because of your crazy idea and hurting the Democratic club and election."

26.    To retaliate against plaintiff for his exercise of his political speech, expression, and association Mayor Kim and Councilman Min conspired and otherwise acted in concert with each other to improperly and unjustifiably alter the terms of plaintiff's employment as Borough Administrator of the Borough.

**EXHIBIT B**

27.     Beginning on or about October 24, 2023 Mayor Kim—in concert with Councilman Min—demanded that the Borough issue a "Rice Notice"[2] to plaintiff and instructed the Borough Clerk to issue a notice for a "special meeting" of the governing body on the topic of plaintiff's employment with the Borough to be held on October 26, 2023.

28.     Mayor Kim was forced to cancel the October 26, 2023 special meeting because the Rice Notice was not sent to plaintiff.

29.     Mayor Kim—in concert with Councilman Min—then sought to re-schedule the special meeting to discuss plaintiff's employment for October 30, 2023.

Mayor Kim in concert with Councilman Min rescheduled the special meeting a second time and rescheduled it to be held on November 2, 2023.

30.     On information and belief, in an email on October 30, 2023 at 12:45 PM from his government email account, Mayor Kim directed the Borough Clerk to "create the RICE Notice for the Borough Administrator and serve him with the now [*sic* "notice"] for the Special Meeting pertaining to Personnel Matters."

---

[2] A "Rice Notice" is a form or protection afforded to public employees—like plaintiff—under the New Jersey Senator Byron M. Baer Open Public Meetings Act, *N.J.S.A.* 10:4-1 to -21 (the "OPMA") based on the decision of the Superior Court of New Jersey, Appellate Division in *Rice v. Union Cty. Reg'l High Sch. Bd. of Educ.*, 155 N.J. Super. 64 (App. Div. 1977). It notifies the~~an~~ employee that an aspect of their employment is going to be a topic of discussion at an upcoming meeting of a public body~~, such as a school board~~.

10

**EXHIBIT B**

31.    In that email of October 30, 2023, Mayor Kim instructed the Borough Clerk to "confirm by 3 PM today that these assignments are completed."

5.32.  At 4:08 PM on October 30, 2023, because he had not received a response from the Borough Clerk by the time he demanded it, Mayor Kim again emailed her to reschedule the special meeting for Thursday, November 2, 2023 at 1:00 PM. In that email, upon information and belief, Mayor Kim advised the Borough Clerk that "time is of the essence" and that he would like the Deputy Borough Clerk to prepare the Rice Notice to plaintiff exactly the same as one he attached to his email immediately and deliver it to plaintiff.

6.33.  Mayor Kim—in concert with Councilman Min—called for and held a special meeting of the governing body of the Borough on November 2, 2023 to punish the plaintiff for his exercise of political speech.

7.34.  During that special meeting Mayor Kim and Councilman Kim lodged a series of unfounded, false, and fraudulent allegations against plaintiff related to his performance of his job duties. None of the allegations—even if established—would support or justify any alteration in the terms of plaintiff's employment with the Borough.

8.35.  Based solely on those false and pretextual allegations of misconduct, Mayor Kim and Councilman Min, along with Councilwoman Jang and Councilman

11

**EXHIBIT B**

Park along with two Republican members of the Borough Council, proposed a resolution to suspend plaintiff from his position of Borough Administrator.

9.36.  The members of the Borough CouncilBorough Council voted three3 foin favor and 1one against adoption of the resolution with Councilman Min, Councilwoman Jang, and Councilman Park and the two Republican councilmembers voting in favor of adopting the resolution.

10.37.Based on the votes cast  including those of Councilman Min   by Councilman Min, Councilwoman Jang, and Councilman Park the resolution was adopted and became an official act of the Borough.

38.   The action of governing body of the Borough implemented and/or executed a policy statement or decision officially adopted by the Borough's officers in violation of plaintiff's civil rights including, but not limited to his freedom of speech, expression, and association on a matter of public concern.

39.    On December 8, 2023 plaintiff brought an action in lieu of prerogative writs in the Superior Court of New Jersey, Law Division, Bergen County against the Borough, Mayor Kim and the Borough CouncilBorough Council (the "State Court Prerogative Writ Action"). Plaintiff alleged that the November 2, 2023 special meeting violated the OPMA: because (a) Mayor Kim and the other defendants in that action failed to provide the public with adequate notice of the November 2, 2023 special meeting through publication of the meeting schedule in newspapers; and, (b)

**EXHIBIT B**

Mayor Kim and the other defendants in that action failed to provide the public with adequate notice of the agenda known at the time notice of the special meeting was published as required by the OPMA.

40.   In the State Court Prerogative Writ Action, plaintiff sought an order voiding the resolution suspending him as Borough Administrator because it was adopted in violation of the OPMA.

41.   On December 14, 2023, the Honorable Gregg A. Padovano, J.S.C. entered an Order to Show Cause directing Mayor Kim and the other defendants in the State Court Prerogative Writ Action to appear on December 28, 2023 and show cause why that resolution should not voided.

42.   On December 26, 2023, Judge Padovano entered a Case Management Order and second Order to Show Cause extending the return date on plaintiff's application to January 12, 2024. Judge Padovano's December 26, 2023 Order also ordered that Mayor Kim and the other defendants in the State Court Prerogative Writ Action must "maintain the status quo of plaintiff's employment through the adjudication of the Order to Show Cause."

43.   In spite of the restraints imposed on Mayor Kim and the other defendants in the State Court Prerogative Writ Action by Judge Padovano's December 26, 2023 Order, Mayor Kim called for a second special meeting of the governing body of the Borough to held on December 31, 2023.

13

**EXHIBIT B**

44.     During the special meeting held on December 31, 2023, the ~~Borough Council~~Borough Council adopted Resolution 2023-261. That Resolution stated that the governing body "for confidential and personnel reasons pertaining to his appointment as Borough Administrator, must take certain personnel actions during the pendency of an internal investigation" and it "authorize[d] the immediate placement of David Lorenzo, Borough Administrator, on administrative leave with pay, including all emoluments, effective November 2, 2023, pending the conclusion of the Borough's internal investigation."

45.     The ~~Borough Council~~Borough Councilmembers voted three for and three against Resolution 2023-261, resulting in a tie. Councilwoman Jang and Councilman Park voted in favor of that resolution along with a third council member, Sang Lee.[3]

46.     Mayor Kim cast a vote in favor of the Resolution to break the tie so Resolution 2023-261 was adopted.

47.     Judge Padovano heard oral argument on the issues in the State Court Prerogative Writ Action on January 12, 2023 and reserved decision at that time.

---

[3] Councilman Min was not a member of the Borough Council at this time. The council seat he had been appointed to fill—Mayor Kim's unexpired council term—was assumed by Sang Lee as soon as Lee's election to that seat was certified following the November 2023 general election. In the November 2023 election, Councilman Min was elected to fill a different seat on the Borough Council that was up for a full, three-year term. Councilman Min was sworn in to that seat on or about January 1, 2024.

**EXHIBIT B**

48.     On January 22, 2024, before Judge Padovano rendered his decision in the State Court Prerogative Writ Action, Mayor Kim and the other defendants in that action advised Judge Padovano through their attorneys that "the Borough has completed its investigation [in to plaintiff] and wishes to take action on the results of its investigation as to the Plaintiff's performance as Borough Administrator."

49.     On January 29, 2024, Judge Padovano issued an Order that voided and vacated the actions taken by Mayor Kim, Councilman Min, and the other members of the Borough Council Councilwoman Jang, and Councilman Park at the special meeting held on November 2, 2023 because it was an illegal meeting under the OPMA.

50.     On February 13, 2024, Mayor Kim called for a third special meeting to consider, among other things Resolution 2024-66 to terminate plaintiff from his position as Borough Administrator. Resolution 2024-66 provided that plaintiff "shall no longer serve as Borough Administrator, and the Administrator no longer has the support of this Council." Resolution 2024-66 was adopted on a vote of four in favor and none against with two absent. Councilman Min and Councilwoman Jang cast his votes in favor of adoption of the Resolution.[4]

---

[4] Councilman Park was no longer a member of the Borough Council when Resolution 2024-66 was considered as his term expired on December 31, 2023.

15

**EXHIBIT B**

51.    Mayor Kim was quoted in a media report about the reason for adoption of Resolution 2024-66 as saying, "The governing body decided during the reorganization opportunity to consider Lorenzo as an employee and if we want to rehire or terminate his employment." "It was a matter of the governing body not seeing eye to eye with David Lorenzo, and the direction is different. Stuff needed to be done and it wasn't done, and we felt it was time for a change."

52.    Throughout his employment with the Borough of Palisades Park, plaintiff was subjected to discriminatory actions based on his race, color, national origin, and/or ancestry.

53.    On or about January 19, 2022, ~~Stephanie~~Councilwoman Jang~~, ww~~ho had recently been elected to her first term on the ~~Borough Council~~Borough Council ~~—mm~~et with plaintiff on the pretext of learning budget procedures. During that meeting, ~~Ms.~~Councilwoman Jang commented about how the Korean people in the community wanted plaintiff fired because he is not Korean and how he would have to make her look good as she was the only one who could protect him from this. She demanded that plaintiff withdraw a pending ethics claim against her from improper use of school facilities for political activity which included a rally focused on removing plaintiff from his position.

———Plaintiff refused to bow to ~~Ms.~~Councilwoman Jang's political threats and did not withdraw his ethics claim against her.

16

**EXHIBIT B**

54.    ~~Ms. Jang voted in favor of both resolutions to suspend plaintiff and in favor of the motion to terminate his employment.~~

55.    On or about February 16, 2022, Councilman ~~Jae~~ Park approached plaintiff in his office to discuss plaintiff's intentions as Borough Administrator and when he intended to retire or resign. ~~Mr.~~Councilman Park informed plaintiff that him retiring or resigning would be good for the current mayor's political campaign because Palisades Park is a "Korean town" and the citizens wanted a Korean to hold the position of Borough Administrator and wanted to get rid of him for that reason. ~~He~~Councilman Park suggested holding a press conference to announce plaintiff's retirement. Plaintiff did not agree to this, yet, in the following days ~~Mr.~~Councilman Park informed plaintiff that he had set up that press conference for that day.

~~——~~Plaintiff did not attend that press conference and never announced any intention to resign or retire from his position as Borough Administrator.

56.    ~~Mr. Park voted in favor of both resolutions to suspend plaintiff and in favor of the motion to terminate his employment.~~

~~11.~~

**FIRST COUNT**
**RETALIATION UNDER COLOR OF STATE LAW ON ACCOUNT OF CONSTITUTIONALLY PROTECTED SPEECH OR EXPRESSION**
**(~~Borough of Palisades Park,~~ Chong Paul Kim, and Suk "John" Min)**
**(42 U.S.C. § 1983)**

17

**EXHIBIT B**

11.57. Plaintiff repeats and realleges every allegation set forth above as if set forth in this count.

12.58. 42 U.S.C. § 1983 provides, among other things, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."

13.59. Plaintiff's actions in concealing and/or directing others to conceal the name of Councilman Min from election campaign lawn signs and actively campaigning against Councilman Min were speech, or expression, and/or association on a matter of public concern.

60.   Plaintiff's actions in concealing and/or directing others to conceal the name of Councilman Min from election campaign lawn signs was not in any way related to his job responsibilities as Borough Administrator.

14.61. Plaintiff's speech interest on this matter of pubic public concern outweighs the government's interest in effective government operations.

15.62. Plaintiff suffered an adverse employment action through the actions of defendants.

18

**EXHIBIT B**

63.   Plaintiff's speech, expression, and/or association was a substantial motivating factor in the adverse employment action.

64.   Defendants' actions were taken to retaliate against plaintiff for his expression of opinions as a private citizen. The retaliatory acts by defendants were proximately caused by plaintiff's constitutionally protected acts.

16.65. The retaliatory actions of defendants were sufficient to deter a person of ordinary firmness from exercising their constitutional rights.

17.66. Defendants' actions caused or subjected plaintiff to a deprivation of his rights, privileges, or immunities secured by the Constitution including, but not limited to, his right to speak or express his political views and opinions, and/or associate with others based on those political views.

67.   Defendants' actions were taken under color of a statute, ordinance, regulation, custom, or usage, of the State of New Jersey and/or the Borough of Palisades Park.

68.   To the extent that they are sued in their official capacities, Mayor Kim and Councilman Min are not entitled to legislative immunity because those claims are in all respects other than name, to be treated as a suit against the entity. The Borough, as a governmental entity is not entitled to any immunity whatsoever.

69.   To the extent that they are sued in their individual capacities, legislative immunity does not apply to Mayor Kim or Councilman Min because their acts were

19

**EXHIBIT B**

not substantively legislative. An act is substantively legislative where it involves "policy-making of a general purpose" or "line-drawing." Employment actions taken with respect to specific employees do not constitute substantively legislative conduct. Likewise, an official's executive or administrative actions are separable from actions taken in a legislative capacity.

70.   As a direct and proximate result of defendants' unreasonable and unlawful actions, plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

18.

19.71.Plaintiff has been damaged thereby.

**WHEREFORE**, plaintiffs demands judgment against defendants the Borough of Palisades Park, Chong Paul Kim, and Suk "John" Min, for:

   a) Compensatory damages;

   b) Nominal damages;

   c) Punitive damages;

   d) Interest;

   e)  Costs of suit;

   f)  Attorneys' fees; and

**EXHIBIT B**

g)  Such other relief as the Court deems equitable and just.

SECOND COUNT
CONSPIRACY TO VIOLATE CIVIL RIGHTS
(Chong Paul Kim, and Suk "John" Min)
(42 U.S.C. § 1985)

20.     Plaintiff repeats and realleges every allegation set forth above as if set forth in this count.

21.     Mayor Kim and Councilman Min, in or about the State of New Jersey, conspired for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in the State of New Jersey with intent to deny to plaintiff the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

22.     Mayor Kim, Councilman Min, and others, in or about the State of New Jersey, conspired for the purpose of depriving plaintiff, either directly or indirectly, equal protection of the laws, or of equal privileges and immunities under the laws.

23.     Upon information and belief, Mayor Kim, Councilman Min, and others discussed at meetings in person and/or through electronic communications including telephone calls, emails, and text messages their plan and agreement to call for and participate in a meeting of the governing body of the Borough to take action against plaintiff in retaliation for his exercise of his constitutionally protected rights of

21

**EXHIBIT B**

speech, expression, and/or association on matters of public concern and agreed to act together and in concert with each other to accomplish their goals.

24. Mayor Kim and Councilman Min did or caused to be done acts in furtherance of the object of their conspiracy, including, but not limited to, calling for the November 2, 2023 special meeting of the Borough Council for the purpose of violating plaintiff's civil rights, attending that special meeting, and/or proposing, seconding, and/or casting votes on the resolution to suspend plaintiff from his position as Borough Administrator.

25. Plaintiff has been damaged thereby.

**WHEREFORE**, plaintiffs demand judgment against defendants Chong Paul Kim, and Suk "John" Min, for:

a) Compensatory damages;

b) Nominal damages;

c) Punitive damages;

d) Interest;

e) Costs of suit;

f) Attorneys' fees; and

g) Such other relief as the Court deems equitable and just.

**EXHIBIT B**

**SECOND COUNT**
**GOVERNMENTAL POLICY OR PROCEEDURE TO VIOLATE**
**CIVIL RIGHTS - *MONELL v. DEPARTMENT OF SOCIAL***
***SERVICES*, 436 U.S. 658 (1978)**
**(Borough of Palisades Park)**

72.    Plaintiff repeats and realleges every allegation set forth above as if set forth in this count.

73.    The resolutions of the Mayor and Council of the Borough were acts of the municipality constituting official policy of the government itself.

74.    Municipal liability can attach under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for even a single decision made by a final policymaker regardless of whether or not the action is taken once or repeatedly.

75.    The resolutions adopted by the Borough Council were intended by those voting in their favor—including Mayor Kim, Councilman Min, Councilwoman, Jang, and Councilman Park—to retaliate against plaintiff for his exercise of his First Amended rights of speech and association under the First Amendment.

76.    As a direct and proximate result of defendants' unreasonable and unlawful actions, plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, loss of income, loss of retirement, medical and other benefits, medical bills, severe

23

**EXHIBIT B**

emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

77.    Pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), the Borough is liable for the harms and losses sustained by plaintiff.

**WHEREFORE**, plaintiff demands judgment against defendant the Borough of Palisades Park, for:

a)  Compensatory damages;

b)  Nominal damages;

c)  Punitive damages;

d)  Interest;

e)   Costs of suit;

f)   Attorneys' fees; and

g)  Such other relief as the Court deems equitable and just.

<u>**THIRD COUNT**</u>
**COMMON LAW CONSPIRACY TO VIOLATE CIVIL RIGHTS**
**(Chong Paul Kim, and Suk "John" Min)**

26.78.Plaintiff repeats and realleges every allegation set forth above as if set forth in this count.

24

**EXHIBIT B**

27.79.Mayor Kim, Councilman Min, and others conspired for the purpose of committing acts in violation of 42 U.S.C. §§ 1983 and 1985 to damage plaintiff.

28.80.Upon information and belief, Mayor Kim, Councilman Min, and others discussed at meetings in person and/or through electronic communications including telephone calls, emails, and text messages their plan and agreement to call for and participate in a meeting of the governing body of the Borough to take action against plaintiff in retaliation for his exercise of his constitutionally protected rights of speech, expression, and/or association on matters of public concern and agreed to act together and in concert with each other to accomplish their goals.

29.81.Mayor Kim and Councilman Min did or caused to be done acts in furtherance of the object of their conspiracy, including, but not limited to, calling for the November 2, 2023, December 31, 2023, and February 13, 2024 special meetings of the Borough CouncilBorough Council for the purpose of violating plaintiff's civil rights, attending thatose special meetings, and/or proposing, seconding, and/or casting votes on the resolutions—and/or encouraging others to do so—tto suspend and/or discharge plaintiff from his position as Borough Administrator.

82.    The acts of Mayor Kim and Councilman Min had an unlawful purpose, including, but not limited to damaging plaintiff for his exercise of constitutionally protected rights of speech, expression, and association.

**EXHIBIT B**

30.83. As a direct and proximate result of defendants' unreasonable and unlawful actions, plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, loss of income, loss of retirement, medical and other benefits, medical bills, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

31.84. Plaintiff was damaged thereby.

**WHEREFORE**, plaintiffs demands judgment against defendants Chong Paul Kim, and Suk "John" Min, for:

a) Compensatory damages;

b) Punitive damages;

c) Interest;

d)  Costs of suit;

e)  Attorneys' fees; and

f)  Such other relief as the Court deems equitable and just.

**FOURTH COUNT**
**NEW JERSEY LAW AGAINST DISCRIMINATION, *N.J.S.A.* 10:5-1 to -49**
**"Natural Origin Cleansing"**
**(Borough of Palisades Park)**

85.    Plaintiff repeats and realleges every allegation set forth above as if set forth in this count.

**EXHIBIT B**

86.    The New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 to -49 ("NJLAD") prohibits discrimination because of, among other things, "race, … color, national origin, [or] ancestry." *N.J.S.A.* 10:5-3.

87.    Plaintiff is of Italian American heritage and a life-long second-generation American citizen and resident of Palisades Park, New Jersey.

88.    The Borough suspended and ultimately terminated plaintiff because of his race, color, national origin, and/or ancestry.

89.    The Borough discriminated against plaintiff based on his race, color, national origin, and/or ancestry.

90.    As a direct and proximate result of defendants' unreasonable and unlawful actions, plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, loss of income, loss of retirement, medical and other benefits, medical bills, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

91.    Plaintiff was damaged thereby.

**WHEREFORE**, plaintiff demands judgment against defendant, Borough of Palisade Park, for:

     a)  Compensatory damages;

     b)  Punitive damages;

27

**EXHIBIT B**

c)  Interest;

d)   Costs of suit;

e)   Attorneys' fees; and

f)  Such other relief as the Court deems equitable and just.

**FIFTH COUNT**
**AIDING AND ABETTING NEW JERSEY LAW AGAINST**
**DISCRIMINATION, *N.J.S.A.* 10:5-1 to -49**
**"Natural Origin Cleansing"**
**(Chong Paul Kim, Suk "John" Min Stephanie Jang and Jae Park)**

91.    Plaintiff repeats and realleges every allegation set forth above as if set forth in this count.

92.    Mayor Kim, Councilman Min, Councilwoman Jang and Councilman Park actively participated the unlawful discrimination against plaintiff because of his race, color, national origin, and/or ancestry.

93.    Mayor Kim, Councilman Min, Councilwoman Jang and Councilman Park aided and abetted the Borough in violating NJLAD.

94.    Mayor Kim, Councilman Min, Councilwoman Jang and Councilman Park created, promoted, and fostered discriminatory, and abusive atmosphere, and they each participated in, allowed, promoted, aided and abetted actions against plaintiff that constitute harassment, abuse, hostile work environment, and discrimination based on protected traits.

28

**EXHIBIT B**

95.   NJLAD prohibits conduct that aids or abets unlawful discrimination and harassment.

96.   At all relevant times, Mayor Kim, Councilman Min, Councilwoman Jang and Councilman Park were decision makers with regard to the Borough's operations and failed to take prompt, appropriate, and/or remedial measures to prevent, stop, and remedy the harassment, abuse, hostile work environment and discrimination aimed at plaintiff.

97.   At all times relevant hereto, Mayor Kim, Councilman Min, Councilwoman Jang and Councilman Park knowingly and substantially assisted themselves, one another, and others in violation of NJLAD.

98.   At all times relevant hereto, Mayor Kim, Councilman Min, Councilwoman Jang and Councilman Park were aware of their roles in the overall illegal and unlawful activity directed at plaintiff at the times that activity occurred.

99.   As a result of the conduct set forth herein, Mayor Kim, Councilman Min, Councilwoman, Jang and Councilman Park are subject to individual liability pursuant to NJLAD.

100.  As a direct and proximate result of defendants' unreasonable and unlawful actions, plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, loss of income, loss of retirement, medical and other benefits, medical bills, severe

29

**EXHIBIT B**

emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

101.   Plaintiff was damaged thereby.

**WHEREFORE**, plaintiff demands judgment against defendants, Chong Paul Kim, Suk "John" Min Stephanie Jang and Jae Park, jointly and severally, for:

a)  Compensatory damages;

b)  Punitive damages;

c)  Interest;

d)   Costs of suit;

e)   Attorneys' fees; and

f)  Such other relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

 /s/ Richard Malagiere
RICHARD MALAGIERE
LEONARD E. SEAMAN
THE LAW OFFICES OF RICHARD MALAGIERE
A Professional Corporation
250 Moonachie Road, Suite 300A
Moonachie, New Jersey 07074
Tel. (201) 440-0675
rm@malagierelaw.com
les@malagierelaw.com

DATED: November 3, 2023March      , 2024

30

**EXHIBIT B**